UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                               Plaintiff,<br><br>v.<br><br>HARDEV SINGH MOHAN SINGH PANESAR,<br><br>                              Defendant. | Case No.: 17-cr-1371-GPC<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 159]** |

Defendant Hardev Singh Mohan Singh Panesar ("Panesar") filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c). ECF No. 159. The Government opposes. ECF No. 163 ("Opp."). For the reasons that follow, Panesar's motion is DENIED.

**I.     BACKGROUND**

Panesar was convicted by guilty plea of one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349, three counts of Wire Fraud in violation of 18 U.S.C. § 1343, four counts of False Impersonation of an Officer or Employee of the United States in violation of 18 U.S.C. § 912, and one count of Structuring Financial Transactions to Evade Reporting Requirement in violation of 31 U.S.C. § 5324(a)(3). ECF No. 144. Panesar was sentenced to a term of imprisonment of 85 months, followed

1

by 3 years of supervised release. *Id.* Panesar is serving his sentence at a privately run facility, the Reeves County Detention Center ("Reeves"). ECF No. 149. Panesar has served approximately 32 months, or over a third of his sentence.

Panesar is 73 years old and suffers from type II diabetes, hypertension, high cholesterol, and hypothyroidism, and has a body mass index of 31, among other health conditions, and contends that his age and health render him vulnerable to severe illness were he to contract COVID-19 while in custody. *Id.*; ECF No. 109 ("Presentence Investigation Report" or "PSR") at 3, 28.

On November 30, 2020, the Court accepted as filed Panesar's pro se motion for compassionate release. ECF No. 159. The Court thereafter appointed counsel to assist Panesar in seeking compassionate release. ECF No. 160. On December 14, 2020, the Government filed a response. Opp. On January 13, 2021, Panesar, through counsel, filed a reply. ECF No. 168.

## II.  DISCUSSION

Panesar moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Panesar has satisfied the administrative exhaustion requirement, and second, whether Panesar has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).  One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*.  As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A.   Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release.  The parties agree that Panesar has met the statutory exhaustion requirement because he filed this motion over 30 days following his request for compassionate release to the Warden of Reeves.  ECF No. 159 at 12; Opp. at 9 n.5.  Accordingly, the Court can consider the merits of Panesar's motion.

### B.   Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons."  The

Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.  While the Court's decision is guided by this policy statement, a number of district courts have found that the amended Section 3582(c)(1)(A)(i) grants courts independent discretion to determine whether a defendant has provided extraordinary and compelling reasons for a reduction of their sentence.  *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md.), *aff'd sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *see also United States v. Redd*, 444 F. Supp. 3d 717, 724–25 (E.D. Va. 2020).

Panesar argues that his pre-existing conditions and advanced age render him uniquely vulnerable to COVID-19.  ECF No. 159 at 16; ECF No. 168 at 6–12.  The Government does not contest that Panesar's age and health conditions place him at increased risk of severe illness were he to contract COVID-19, though it argues that his risk is tempered because his conditions are being well-managed while he is incarcerated at Reeves.  Opp. at 11.

The Court finds that the heightened risks that Panesar faces if he were to contract COVID-19 based on his age and medical conditions establish extraordinary and compelling reasons for his release.  COVID-19 has been found to cause significantly more severe illness in older individuals.  *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.  Both diabetes and obesity are factors identified by the Centers for Disease Control and Prevention ("CDC") that heightens the risk of severe injury for those who contract COVID-19, while those suffering from hypertension "might be at an increased risk for severe illness."  *See id.* Any incarcerated person with one of the underlying conditions or in an at-risk age group as identified by the CDC is unlikely to be able "to provide self-care within the

environment of a correctional facility" to avoid contracting and suffering severe effects of COVID-19 as the virus continues to spread. U.S.S.G. § 1B1.13 cmt. 1(A)(ii). *See United States v. Ramos*, 450 F.Supp.3d 63, 65 (D. Mass. 2020) ("[I]t is not possible for a medically vulnerable inmate . . . to isolate himself in this institutional setting."). Therefore, the Court finds Panesar's age and health conditions present extraordinary and compelling reasons under Section 3582.

Before determining if release is warranted, the Court must also take into account public safety and the Section 3353(a) sentencing factors. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii); U.S.S.G. 1B1.13(2). These factors include, among other things, the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Panesar argues that he is not a danger to the community and presents limited risk of reoffending, and that his exemplary conduct during incarceration weighs in favor of compassionate release. ECF No. 159 at 17; ECF No. 168 at 18–20. Panesar further contends that his sentence under current conditions is far more harsh than what was contemplated during sentencing. ECF No. 168 at 17–18. In response, the Government argues that Panesar's offense was extremely serious, causing over 100 victims to suffer combined losses of more than $2,500,000, and that Panesar is at risk for reoffending given his previous conviction for similar fraudulent conduct and attempt to evade responsibility for the present offense by fleeing to Mexico. Opp. at 13–15. The Government also notes that Panesar would be placed into the custody of Immigration and Customs Enforcement ("ICE") and removed from the United States upon his release and thus could not be subject to home confinement. *Id.* at 18.

The Court finds that on balance, the extremely serious nature and expansive scope of Panesar's offense weigh strongly against reducing his sentence to time served. Panesar organized and led a fraudulent immigration scheme in which he represented himself to be a DHS agent and promised to provide undocumented individuals with immigration status in exchange for approximately $30,000 to $50,000.  PSR at 6. Panesar's actions resulted in vulnerable individuals and families losing their life savings. *Id.* at 9–15; 18.  One victim of the scheme died by suicide after being defrauded of thousands of dollars, and an alleged co-conspirator was murdered as an indirect result of Panesar's actions. *Id.* at 16, 18.  Panesar also sought to avoid any responsibility for his offense up until the last moment, including by fleeing to Mexico after entering his guilty plea. *Id.* at 15–16.  Panesar has served only about one third of his sentence, and the Court is concerned that a reduction to time served would not nearly reflect the severity of Panesar's offense.  The fact that he will be removed from the country upon his release also prevents the Court from imposing other, non-custodial conditions that would ensure his sentence reflects of the severity of the offense and would deter future offenses. Although the fact that a defendant will be deported upon release is not dispositive in determining whether to grant a motion under Section 3582, *e.g.*, *United States v. Guntipally*, No. 16-CR-00189-LHK, 2020 WL 6891827, at *4 (N.D. Cal. Nov. 23, 2020); *United States v. Olawoye*, No. 1:15-CR-00172-AA-5, 2020 WL 4559816, at *5–6 (D. Or. Aug. 7, 2020), the Court must evaluate these factors in light of the facts of the case at hand.  Here, Panesar is an individual who has for years engaged in schemes that prey on society's most vulnerable.  Ordering his release would not adequately account for the irreversible harm he has inflicted upon the victims and their families.

Although the Court recognizes the serious health risks Panesar faces while in custody, the Court finds that releasing Panesar after having completed only about 32 months of his sentence without the possibility of home confinement or continuing supervision is not warranted under the Section 3582.

### III. CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 15, 2021

Hon. Gonzalo P. Curiel
United States District Judge